The next case for oral argument this morning is 21-2737 P.A.V. v. Bondi. Good morning. Good morning, Your Honor. May it please the Court. There are several reasons why this Court should remand. Today I'd like to start with the Board's failure to consider the issue of past persecution. The Board found, and I'm quoting, There is no dispute that the applicant has not experienced past persecution. The Board was incorrect. There was a very clear dispute about past persecution. The immigration judge addressed the issue and decided the issue in his decision. And my client argued the issue in his appeal brief to the Board. In fact, two full paragraphs of his brief addressed the issue. And he didn't just mention past persecution six times, but he cited the Fifth Circuit's directly on point decision in Morales-Lopez v. Garland. He tied the law to the facts of his case. And he argued, and I'm quoting again from these paragraphs, The I.J. dismissed the idea of past persecution, failed to meaningfully consider all the relevant evidence, and could have determined that my client suffered past persecution. And I'll direct the Court to Appendix Pages 11 and 16 for those paragraphs. The question here is whether these paragraphs lacked even the semblance of an argument or whether they were sufficient to put the Board on notice that my client sought to challenge the immigration judge's denial of his claims of past persecution. And that's this Court's decision in Hamdan v. Mukasey. And we submit the arguments were more than sufficient to put the Board on notice and that his brief speaks for itself. So the next question is why does any of this matter? Why does it matter that the Board did not address the issue of past persecution? It matters because if the Board had considered the issue, it very well could have disagreed with the immigration judge. The Board, under this Court's case law... Why didn't the Board decide it? Why isn't it clear that the Board actually decided it? Because it went on to say after it said there's no evidence that the applicant himself suffered past persecution and then went on to explain it doesn't appear that the death of his brother was targeted at the applicant or that the family member's incidents were targeted. It sounds like the Board's statement was clarified by addressing the evidence of the Court. The Board did address it. Your Honor, that's not the way I read the decision. What the Board said was that there's no dispute and then he went on to address immediately, I believe, future persecution to address certain facts as they relate to the risk of a future threat to life or freedom. The Board specifically said there's no evidence the applicant himself suffered past persecution. That sounds like past persecution. And then went on to say no evidence of a link between family members and PAV himself, which would be the relevant piece for past persecution. Your Honor... Frankly, I'm not sure which page of the decision you're referring to. I'm looking at the short appendix, page four, and the Board simply says there's no dispute. But even if it addressed the dispute in the way Your Honor is describing, that is not sufficient. That's certainly not sufficient because the Board was obligated under the Court's case law, just as the immigration judge was, to consider the totality of the circumstances and to determine whether the harm suffered by family members in combination with other factors may constitute past persecution of the applicant. That's Chen versus Holder. And so if the Board addressed the issue by simply saying that there's no dispute he personally experienced harm, that's not the right inquiry and it's also incorrect, which brings me to the immigration judge's analysis. The immigration judge considered only two events in his past persecution analysis. The first was, as the immigration judge described it, somebody came up to his table at a restaurant and demanded that he immediately leave town. I'd just like to clarify, it was four or five armed members of the cartel who pointed their guns at him, flipped over his table, and my client fled immediately, first the restaurant and then the country. And the immigration judge dismissed this as, quote, not past persecution, and that's it. No further analysis whatsoever. And the second event that the immigration judge considered was the murder of my client's brother. With respect to that event, the immigration judge said it does not appear to be targeted at the applicant, and again, that's it. But under Chen versus Holder, it does not matter if the family is harmed in order to target the applicant. And aside from those two facts, there are many key facts that the immigration judge did not consider at all in his past persecution analysis. One of these was the credible threats to my client that were made in phone calls and messages to his parents. I'll direct the court to appendix page 229, and that's where my client explained that they threatened to harm me because I was my parent's son, because the cartel was threatening the entire family. They were also burglarizing and ransacking their home. And I'll also make clear, this might not be clear in the briefing, and frankly, it's not 100% clear in the record, but my reading of the record is that these calls happened while he was still in Mexico, as long ago as 1999, and continued all the way up through at least the death of his brother in 2018. So we're talking about a 20-year, at least, stretch of time where the family's being threatened with harm to themselves and to their children. And the immigration judge did not consider it for past persecution at all, and of course, neither did the court. What was the strongest argument that the threats against the family members had anything to do with PAV? Well, the evidence is that they were directed at PAV. Let me put it this way, Your Honor. There are several cases that make clear the threats can be aimed at the applicant without being made to the applicant, and that's what we have here. Not only was he directly threatened in the restaurant by armed members of the cartel, and on that point I'd refer to the WGA case where the applicant was threatened with the firearm, and that alone was past persecution. But he was also threatened through the phone calls to his parents. And then, to Your Honor's question, I want to make clear, it's not any one event that we're contending amounted to past persecution, and that wasn't the evidence. The evidence was Dr. Meade's testimony, who said it's a combination of all of these things. It's the family members being killed, the family members being kidnapped, extorted, threatened. It's the combination that led him to believe my client would be targeted, and that too went unaddressed by the immigration judge and by the board in the past persecution analysis. And the key point here is that the court does not need to decide. It shouldn't decide the merits of the issue. It should not decide that the immigration judge was right or wrong in how it weighed this evidence or what it considered. What it should do is remand so that the board can address the issue in the first instance and address these key facts that it never addressed in its decisions below. Because my client was entitled to meaningful review from the board, and I frankly just do not think he got that with respect to the past persecution issue. And I'll note the board's failure affected its entire analysis because a finding of past persecution would have shifted burdens. It would have created a presumption of future persecution. It would have shifted the burden to the government with respect to the question of relocation, and the entire analysis would have been different. And so for all those reasons, the board should, or excuse me, the court should remand to the agency and to the board to consider this issue in light of the court's guidance from Chen versus Holder. The second issue relates to the mixed motives analysis, the nexus analysis. And the immigration judge here wrote that the core of his ruling was his determination that no one is targeting the applicant's family other than extorting them. That sounds to me like the agency found that the family was being targeted because it was being extorted. The cartels were extorting the family. But because it was extortion, it wasn't persecution. And that was error because an applicant can qualify for withholding or removal if his persecutors had one or more motives. Why doesn't that reflect the immigration judge's finding that the family was being targeted for extortion reasons, not because of a link to PAV? Well, Your Honor, the immigration judge... Because they had, under their home, they had resources and that they were targeting them for those reasons. Again, not linked to PAV, which is what the nexus requires. Your Honor, the nexus requires that they be motivated in part by one of the factors specified in the act, which includes membership in a particular social group, including family membership. But the immigration judge never asked that question. It never asked whether that extortion that it evidently found was partly motivated by family membership. It never considered the possibility that extortion can be committed by persecution or through persecution. And on that point, the court's decision in Mojadin v. Gonzalez, the family was, I believe the family was wealthy, they were being targeted for money, for extortion, but the family was being targeted. And the court said it doesn't matter that their end goal might be money, they were targeting the family. And that's similar to the case we have here. And the government's, in their brief, their only response was that the immigration judge just never reached the issue. In fact, I think the government agrees that if the court thinks it did reach the issue, remand would be appropriate, if it erred on the issue. But with respect to the government, I think that is incorrect, that the immigration judge never reached the issue. Because throughout its opinion, it talks about intent, it talks about the reasons for the cartel's conduct. It didn't dismiss any of this as it couldn't be persecution, but because we don't know why it happened, we don't know what drove the cartel to do this. And those are quintessential findings of Nexus. And with the court's permission, I'd like to reserve the remainder. Yes, certainly. Thank you. Certainly, thank you. Mr. Hayes? Good morning, Your Honors. Good morning. May it please the Court, Timothy Hayes on behalf of the Attorney General. The agency correctly found no past persecution in this case. The sole harm to Petitioner was a restaurant incident in 1999 in Mexico where persons he believed may be cartel members, but he's not sure which cartel, accosted him and people that were eating with him, and they were able to escape unharmed. I understand that they're trying to tie incidents to the family at large while he was in the United States to past persecution to himself, but that's not permitted under case law. There must be something tying those incidents to him in order for that to work. And I appoint the Court to Chen v. Holder, which argues about the totality of circumstances. And also, in that case, they cite a Second Circuit case called Jing v. Holder, which talks about whether past persecution could work based on family member harm and typically only in cases within the zone of risk. What about the testimony from the Petitioner that the cartel told his family members that if they didn't comply that they would threaten and harm him? Isn't that a direct threat? It would be a threat, but I don't believe that was never testified as far as I know. What they were citing to, I believe, was his declaration that he submitted with an asylum application. There was actually no testimony about the threats. The only thing I recall from the record was the last incident was in 2018 where the brother was murdered on Christmas Eve day, and then there was nothing after that. I know Professor Mead was asked about whether the parents, who were still living in the same home, continued to be extorted, and he didn't know. No one knew. No one even knew whether these threats were continuing against the family as a whole. And that's kind of the crux of this whole case. It appeared to the agency to be more associated with generalized violence in Mexico than a targeted vendetta against the family, and that makes a world of difference because that goes to whether Petitioner has a clear probability of facing harm in Mexico if he were to go back. Obviously, to himself, he has a restaurant incident, but it was very long ago, and it wasn't enough to show past persecution, so we have to see a substantial risk of harm based on his particular circumstances. And he's trying to base it on experiences that random family members, and I agree the brother isn't random, but some of the other ones were more distant relative family members, and it wasn't enough in the agency's view to show a heightened risk. I'm sorry. The statement is, the testimony is, the question is, what did your mom tell you that the caller said to her? And the response is, they get threatened. They get threatened to pay the quota so that they are allowed to work or else they will kidnap a member of the family or a son or a daughter, right? And so he's a son, and so why isn't that a direct threat to harm him if his parents didn't comply? I believe that was made in, like, 2013. That wasn't a recent threat. And the problem is we don't know where these threats are coming from. We don't even know which cartel it is. So, again, we have a bunch of random events happening to family members, and if it's not an organized vendetta against the family, it's hard to tie it to petitioner personally, especially in a past persecution context. All of the incidents to the family members that were discussed, the agency did analyze, but they analyzed it correctly under the rubric of whether it's a substantial risk of harm to him if he were to go back to Mexico, perspectively. And in that regard, the biggest issue, or I guess the strongest evidence on their side, would be the murder of Petitioner's brother on Christmas Eve day. And Professor Mead's testimony regarding that murder. The agency, and in particular the immigration judge, correctly rejected that testimony, as this is prerogative, as not being persuasive enough to establish a link between the murder of Petitioner's brother and Petitioner himself to raise the risk to Petitioner that if he were to return to Mexico, he would encounter a clear probability of persecution. As far as the application under the Convention Against Torture Regulations, the agency correctly found that Petitioner did not establish a likelihood of facing torture. There was no past torture in this case. The incident, again, was a restaurant incident where he was thankfully able to escape unharmed. The immigration judge, Hsu, at page 80 of the record, said that there's no connection among the various crimes that have happened to the applicant's brother, but also more distant family members, to suggest that Petitioner has any particularized risk of facing torture in Mexico above and beyond fears of generalized violence. Now, he did say, and that's under the regulation, that you do have to consider country conditions in the torture analysis, which he did, but he said here it's not enough with his particularized circumstances to suggest that he would face a clear probability of torture in Mexico. And unless Your Honors have any further questions, I would ask that you please deny the petition. Thank you. Thank you, Mr. Hayes. Mr. Satema. Thank you, Your Honor. First, I just want to refer to short appendix page four and make clear what I was referring to with respect to the Board's decision on past persecution. In the middle of that page, the Board says, there is no dispute that the applicant has not experienced past persecution. As such, the applicant is not entitled to the presumption that his life or freedom would be threatened on account of a protected ground. The next paragraph proceeds to future persecution, and it continues to discuss certain facts in that context. So I just want to make clear, in case there's any confusion, that's what I'm referring to when I suggest that the Board simply did not consider the issue. It found the issue undisputed, and I don't believe I heard any argument otherwise from the government. The second point I'd like to make is that it seems clear to me that the government's asking this court to weigh the evidence. It's asking this court to get into the merits of the issues, including past persecution. And they did not advance any argument just now that these arguments were not exhausted for the agency. Again, I just want to make clear, consistent with this court's practice, the Board did not consider the issue, and it certainly did not discuss or analyze the issue in any depth at all. And in those circumstances, a remand is appropriate to allow the agency to address it properly in the first instance. My third point, there was some discussion of Dr. Meade's testimony. What was not mentioned was all the testimony that the agency did not consider from Dr. Meade, and I just want to quickly run through some of this. Dr. Meade explained how and why cartels target members, target family members of their extortion victims, to keep control over them and their property. He testified about statistics, like the homicide rate, 59 deaths out of every 100,000, and how that just doesn't add up to somewhere between six and nine members of your family being killed, kidnapped, extorted, and threatened. He testified that it does not look like random violence because people live in a violent town. It looks more targeted to me. It's a narrow circle of probability. When you consider all of these violent offenses against one family, and he stressed that it's a combination of all of these things, none of that was addressed by either the immigration judge or the board at any point in either of their decisions. And finally, I might have failed to mention appendix page 229 in my opening argument. I think that's an important page. That is where certain key facts are presented that never found its way into either decision, such as the cartel pointing guns at my client at the restaurant. It was not just a confrontation. It was an armed threat. He also mentioned how he was asked, why does the cartel want to harm you? Because I am my father's son, and they want to harm me for this. And finally, I did not hear any argument on nexus, and I did not hear any argument on relocation. I apologize if I missed something, but the government has advanced no argument on those issues. And so for all these reasons, we request that the court remand. Thank you very much. Thank you. Thanks to both counsel. The court will take the case under advisement.